**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**CHRISTOPHER SALOMON,**

      **Petitioner,**

**v.**                            **Case No. 5:22-cv-00081**

**KATINA HECKARD, WARDEN,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On February 16, 2022, Petitioner Christopher Salomon ("Salomon"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending is Respondent's request for dismissal as articulated in her response to the Court's orders to show cause. (ECF No. 6).

Having thoroughly reviewed the record, the undersigned **FINDS** that Salomon did not exhaust his administrative remedies and does not state a claim for relief under § 2241. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the request for dismissal; **DISMISS** the Petition for a Writ of Habeas Corpus; and remove this matter from the docket of the Court.

## I.    <u>Relevant Facts</u>

Salomon is a federal prisoner incarcerated in Federal Correctional Institution Beckley ("FCI Beckley") in Beaver, West Virginia with a projected release date of December 2, 2023. *See* Inmate Locator, Federal Bureau of Prisons, Inmate No. 59294-056. On February 16, 2022, he filed a *pro se* petition for habeas relief under § 2241. (ECF No. 1). While his petition is cursory, it appears from context that Salomon seeks application of time credits to his sentence under the First Step Act ("FSA") for his participation in certain prison programs and activities.[1] (ECF No. 1 at 1). He attaches documents showing that he has participated, and continues to participate, in classes and training. (*Id.* at 2–4).

On March 1, 2022, the undersigned entered an Order directing Respondent to show cause why the relief requested by Salomon should not be granted. (ECF No. 5). Respondent filed a response on March 11, 2022, wherein she moved to dismiss Salomon's petition. (ECF No. 6). Respondent contends that Salomon did not exhaust

---

[1] The FSA, enacted on December 21, 2018, allows eligible federal prisoners who have not committed offenses enumerated in 18 U.S.C. § 3632(d)(4)(D) to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A)(i). Prisoners who are determined "to be at a minimum or low risk for recidivating," may "earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities," if they have not increased their risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii). The BOP utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to evaluate "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," as well as to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *United States v. Tinsley*, No. CR ELH-13-476, 2021 WL 5084691, at *16 n. 8 (D. Md. Nov. 2, 2021) (citing 18 U.S.C. §§ 3632(a)(1), (4)). A prisoner's FSA time credits can be applied to the prisoner's sentence to result in earlier release to pre-release custody, such as a residential reentry center ("halfway house") or home confinement, or up to 12 months of credit can be applied to a prisoner's term of supervised release. 18 U.S.C. §§ 3624(g), 3632(d)(4)(C). The credits can be earned retroactively beginning on the date that the FSA was signed into law. 18 U.S.C. § 3632(d)(4)(A). However, the FSA established a two-year "phase-in" period, and the BOP interpreted that it had until January 15, 2022 to apply the applicable time credits to prisoners' sentences. 18 U.S.C. § 3621(h)(2); (ECF No.8 at 4-6).

his administrative remedies before filing the instant petition and, according to an attached document showing Salomon's history of filing remedies, he has never filed an administrative remedy while in BOP custody. (*Id.* at 2–3). Further, Respondent argues, while Salomon is eligible to earn FSA time credits, his earned credits cannot be applied because he was evaluated as a high risk of recidivism. (*Id.* at 3–4). Thus, Respondent concludes, Salomon is not entitled to relief and the petition must be denied. (*Id.* at 4). Respondent attaches several documents to her response, including an affidavit from Destiny Spearen, a paralegal for the Beckley Consolidated Legal Center, who affirms the accuracy of the administrative remedy data, inmate profile, and inmate education data also attached. (ECF No. 6-1 at 2–3). As shown in the documents, the BOP determined that Salomon is eligible to earn FSA time credits, but as of his assessment on January 23, 2022, he is a high recidivism risk. (*Id.* at 7–8).

Salomon filed a reply on March 30, 2022. (ECF No. 8). Salomon disagrees with Respondent's conclusion that he must exhaust his administrative remedies because he argues his claim involves "a narrow dispute of statutory construction" which is exempt from the exhaustion requirement. (*Id.* at 1). He further contends that he seeks application of the FSA credits because by the time his "level drop[s]" he will have already been released, and he wants to be placed in a halfway house to obtain job and housing assistance. (*Id.* at 2).

## II.    <u>Standard of Review</u>

Respondent requests that Petitioner's petition be dismissed. (ECF No. 6 at 1). Although Respondent does not identify the rule under which the request for dismissal is brought, given the stage of the proceedings and nature of the arguments presented, it is best understood as a motion to dismiss under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6). Because Respondent filed a response concurrently with the request for dismissal, the motion should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Respondent makes two arguments: one asserting a lack of jurisdiction and one claiming that Petitioner fails to state a claim for which relief may be given. A Rule 12(c) motion asserting a lack of jurisdiction applies the same standard of review used for a motion under Rule 12(b)(1), while a failure to state a claim is analyzed using the standard of review for Rule 12(b)(6) motions. *See Humphrey v. Glob. Equity Lending, Inc.*, No. 2:08CV68, 2008 WL 5262769, at *3 (E.D. Va. Dec. 17, 2008).

A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend—as in this case—that a pleading "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the petitioner the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party

4

asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion under Rule 12(b)(6) addresses whether the petition includes sufficient factual allegations to state a claim upon which relief may be granted. A pleading fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2nd Cir. 2007)). In deciding a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations contained in the petition, *Erickson v. Pardus*, 551 U.S. 89 (2007), but is not required to accept the legitimacy of legal conclusions. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a petition must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

Similarly, when deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject

5

to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, without converting the motion into a motion for summary judgment. *Id.* The court "may also consider documents attached ... to the motion to dismiss, so long as they are integral to the [petition] and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.    Discussion

### A.    Exhaustion

Respondent contends that Salomon did not exhaust his administrative remedies before seeking habeas relief in this action. Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001)). The Court may, in its discretion, waive exhaustion under certain circumstances, such as "when a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010). However, "in the absence of

exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent [...] courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (citations and marking omitted). "While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated, it is the avenue of last resort." *Id.*

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id.* at § 542.13. An inmate can then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at § 542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id.* at §§ 542.14, 542.15.

One important aspect of exhaustion is that it creates an administrative record for the Court to review. As the BOP is charged with computing an inmate's sentence and has "developed detailed procedures and guidelines for determining credit available to prisoners," *United States v. Wilson*, 503 U.S. 329, 334 (1992), the BOP should have the first opportunity to review its calculation in this case and determine if any errors were made. As a district court recently explained:

> [T]he responsibility for determining sentence-credit awards lies with the Attorney General, through the BOP, as opposed to district courts. *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (citing *United States v. Wilson*, 503 U.S. 329, 330 (1992)). ... Because the BOP calculates a prisoner's credit towards his federal sentence, a dissatisfied inmate must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence. *Id.* (internal quotations and citation omitted).

*United States v. Usma*, No. 2:19-CR-133-SPC-MRM, 2022 WL 267518, at *1 (M.D. Fla. Jan. 28, 2022) (internal markings omitted).

Salomon admits that he did not exhaust his administrative remedies. (ECF No. 8 at 1). However, relying on precedent from the Court of Appeals for the Third Circuit ("Third Circuit"), he insists that he is exempt from the exhaustion requirement because his claim presents a narrow question of statutory construction. (*Id.*). He also vaguely asserts that exhaustion is futile. (*Id.*).

In the decades-old case Salomon cites, the Third Circuit mentions in a footnote that the presentation of a question of legal interpretation falls under an exception to the exhaustion requirement according to its precedent. *Harris v. Martin*, 792 F.2d 52, 54 n.2 (3d Cir. 1986). However, even if such an aside from the Third Circuit was a binding holding that could dictate the findings of this Court, the exception is inapplicable because Salomon identifies no question of statutory construction. He does not point to any supposedly-misinterpreted provision of the FSA that this Court could resolve; he simply wants his FSA time credits applied to his sentence. *See Stucker v. Strong*, No. 4:21-CV-11-MW/MJF, 2021 WL 5567437, at *4 (N.D. Fla. Oct. 25, 2021), *report and recommendation adopted*, No. 4:21CV11-MW/MJF, 2021 WL 5566546 (N.D. Fla. Nov. 29, 2021) (rejecting petitioner's attempt to rely on *Harris* to evade exhaustion requirement when challenging BOP's failure to apply FSA time credits)

("[The petitioner] does not identify any statutory-construction issue that the District Court must or should resolve in this case. Stucker instead seeks only to have the court order the BOP to award [time credits] for her completion of recidivism-reduction programming. Without an issue of statutory construction for the District Court to resolve, the so-called 'statutory construction' exemption is not applicable to this case."); *Dyer v. Fulgam*, No. 1:21-CV-104, 2021 WL 3673825, at *2 (E.D. Tenn. Aug. 18, 2021) (holding that challenge to application of time credits is not a matter of statutory construction when there is uncertainty as to which, if any, credits the petitioner is entitled to receive). The undersigned **FINDS** that Salomon is not exempt from the exhaustion requirement on the basis that the question he presents is a matter of statutory construction.

Salomon alludes to the notion that exhaustion in this matter would be futile and claims that by the time his "level drop[s]" he would have already been released. (ECF No. 8 at 1–2). It appears to the undersigned that Salomon believes exhaustion of remedies in this matter is futile because his sentence will have ended before he could complete the remedy process. Nevertheless, exhaustion is not waived simply because a habeas petitioner believes that the length of the administrative process would preclude him from receiving full relief. *Hughes v. Coakley*, No. 5:15-CV-08088, 2016 WL 744941, at *3 (S.D.W. Va. Feb. 3, 2016), *report and recommendation adopted*, No. 5:15-CV-08088, 2016 WL 742121 (S.D.W. Va. Feb. 24, 2016); *Ferguson v. Saad*, No. 1:18-CV-00394, 2019 WL 1410892, at *1 (S.D.W. Va. Mar. 28, 2019); *Little v. Andrews*, No. 3:20CV863, 2021 WL 1895890, at *2 (E.D. Va. May 11, 2021). Indeed, granting review of inmate release claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course,

9

which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims." *Garrison v. Stansberry*, No. 2:08-CV-522, 2009 WL 1160115, * 3 n. 2 (E.D. Va. Apr. 29, 2009). Moreover, Salomon's entitlement to the application of FSA credits is not so certain that it could be considered futile to exhaust his administrative remedies. *Little*, 2021 WL 1895890, at *2. In fact, as will be explained below, the record reflects that Salomon is ineligible to have his FSA time credits applied to his sentence calculation at this time.

Furthermore, there is no evidence that the BOP clearly and unambiguously violated Salomon's statutory or constitutional rights, and Salomon has not shown that the administrative procedure is clearly inadequate to prevent irreparable harm. *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010). Accordingly, the undersigned **FINDS** that Salomon did not exhaust his administrative remedies, and the exhaustion requirement should not be waived in this instance.

### B.    *FSA Time Credits*

Finally, even if the Court were to waive exhaustion, Salomon fails to assert a basis for relief under § 2241. The statutory language of the FSA prevents application of the credits Salomon has earned to prerelease custody or supervised release. FSA time credits can only be applied to a prisoner's sentence if the prisoner meets certain criteria, including that he or she has "[s]hown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment." 18 U.S.C. § 3624(g). The BOP assessed Salomon to be at high risk of recidivism on January 23, 2022. (ECF No. 6-1 at 8). There is no discernible ambiguity in the language of § 3624(g) as it relates to the BOP's calculation of Salomon's sentence; the provision prevents application of FSA time

credits for offenders who have not demonstrated a reduction in their recidivism risk or maintained minimum or low risk during their incarceration. Salomon does not assert any challenge whatsoever to the BOP's finding that he is at a high risk of recidivism. Therefore, by statute, the FSA time credits cannot be applied to his projected release date at this time. *See, e.g., Knight v. Bell*, No. CV JKB-20-3108, 2021 WL 1753791, at *4 (D. Md. May 4, 2021) (finding that the petitioner was not eligible to use any time credits to reduce his sentence because his current PATTERN score showed a high-risk recidivism level and his claim thus failed, and the petition should be denied, and the action dismissed).

For all of the above reasons, the undersigned **FINDS** that Salomon fails to assert a cognizable claim under the FSA or any other law. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the petition and **DISMISS** this action with prejudice.

## IV.    Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Respondent's request for dismissal, (ECF No. 6), be **GRANTED**; Salomon's Petition for a Writ of Habeas Corpus, (ECF No. 1), be **DENIED**; and this matter be removed from the docket of the Court.

Petitioner is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by

mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** June 6, 2022

Cheryl A. Eifert
United States Magistrate Judge